**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H- 19-4994 |
| | § | |
| ELI LILLY & COMPANY, et al., | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for partial dismissal of plaintiff Harris County's second amended complaint. Dkt. 76. Defendants Eli Lilly and Company, Novo Nordisk Inc., and Sanofi-Aventis U.S. LLC (collectively, the "Manufacturer Defendants"); and defendants Express Scripts Holding Company, Express Scripts, Inc., ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc., CVS Health Corporation, Caremark RX, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., Caremark Texas Mail Pharmacy, LLC, Aetna RX Home Delivery, LLC, Aetna Pharmacy Management Services, LLC, Optum, Inc., and OptumRX, Inc., (collectively, the "PBM Defendants"), request that the court dismiss Harris County's claims asserted under the Texas Deceptive Trade Practices Act ("DTPA") with prejudice. *Id.* After considering the motion, response, reply, second amended complaint, and the applicable law, the court is of the opinion that the motion to dismiss Harris County's DTPA claim (Dkt. 76) should be **DENIED**.

## I. BACKGROUND

This order only addresses Harris County's DTPA claim.  Harris County provides health benefits to its employees through a self-funded health plan. Dkt. 68 (second amended complaint). It subsidizes its beneficiaries' prescription drug purchases, including purchases of drugs used to treat diabetes.  *Id.*  It also purchases diabetes medications for prisoners in Harris County jails.  *Id.*

Harris County alleges that the Manufacturer Defendants manufacture most diabetes medications in the United States, and the PBM Defendants manage the pharmacy benefits for most people in the United States.  *Id.*  It asserts that the Manufacturer Defendants "have in lockstep raised the reported prices of their respective diabetes drugs in an astounding manner," including an insulin price increase of up to 1000%.  *Id.*  Harris County contends the reason for the price increase is a conspiracy between the PBM and Manufacturer Defendants to create a secret spread between the reported price for diabetic medications and the true net price for the same drugs.  *Id.*  Harris County calls this conspiracy the "Insulin Pricing Scheme."  *Id.*

Under this alleged scheme, the PBM Defendants represent to their clients that they use their market power to drive down prices by causing manufacturers to compete on price for placement on their formularies.  *Id.*  Harris County alleges that instead, the PBM Defendants "exploit their market power to cause substantial increases in the prices of diabetes medications in order to create massive profits for themselves and the Manufacturer Defendants," which increases costs for employers who provide employee health benefits, like Harris County.  *Id.*  Harris County asserts that the Manufacturer Defendants artificially raised their reported prices and then secretly refunded a significant portion of the increase to the PBM Defendants, calling the secret refunds "rebates, discounts, concession fees, etc."  *Id.*  Harris County asserts that in reality the refunds are a *quid pro quo* for formulary inclusion and that the PBM Defendants grant formulary status based

on the highest inflated price and largest refund amount. *Id.* Harris County asserts that it spends millions of dollars on diabetes medications and that a substantial part of the amount it spends can be attributed to the inflated prices due to the Insulin Pricing Scheme. *Id.*

The fifth cause of action in Harris County's complaint is a DTPA claim based on the Insulin Pricing Scheme. *Id.* Harris County alleges that the defendants' scheme resulted in violations of the following subsections of the DTPA: 17.46((B)(5), 17.46(B)(11), 17.46(B)(24), and 17.50(A)(3). *Id.* Harris County alleges that it is a "consumer" under the DTPA because it is "'a subdivision . . . of this state who seeks or acquires by purchase or lease, any goods or services,' including diabetes medication and pharmacy benefit management services." *Id.* (quoting the definition of "consumer" in the DTPA). It asserts that the defendants misrepresented that the prices for diabetes medications, the PBM Defendants misrepresented the price reductions to payors like Harris County by indicating that the money they received from the Manufacturer Defendants lowered the overall prices of the medications, the Manufacturer Defendants failed to disclose that the reported prices were not the result of competitive market forces and were artificially inflated in coordination with the PBM Defendants, the PBM Defendants failed to disclose that their formulary construction did not lower the overall price for diabetes medications, and the defendants took advantage of Harris County's lack of knowledge of the scheme to a "grossly unfair degree." *Id.* Harris County alleges that each purchase it made based on the falsely inflated prices represents an independent harm to the County. *Id.* It asserts that it paid excessive and inflated prices every time it paid for an at-issue drug, noting that there are sixty different National Drug Codes associated with the at-issue drugs and the purchases took place at varying times and were dispensed at countless different pharmacies. *Id.* It contends that each purchase benefitted Harris County because "the health and well-being of its employees is essential to Harris County's ability to fulfill

its mission." *Id.* Harris County also alleges that the defendants engaged in a conspiracy to violate the DTPA, citing *Four Brothers Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 667 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). *Id.*

The defendants move for dismissal of the DTPA claims. Dkt. 76. First, they assert that the DTPA has a statutory limit of $500,000 because it is designed to protect small consumers, and Harris County by no means qualifies as a small consumer and does not, in fact, meet the statutory definition of "consumer." *Id.* They contend that all of Harris County's purchases relate to two "projects" and must be aggregated accordingly. *Id.* The defendants' proposed project categories are (1) providing insurance coverage to subsidize prescription drugs purchased by Harris County's health plan beneficiaries; and (2) purchasing drugs for Harris County inmates. *Id.* The defendants assert that since Harris County alleges it "spent tens of millions of dollars on at-issue diabetes products," there is no way the purchases in these two categories fall below the $500,000 statutory limit. *Id.* Second, they argue that the claims relating to the diabetes medicines for employees should be dismissed because Harris County is not a consumer under the DTPA with regard to the drugs purchased for health plan beneficiaries because the drugs were not purchased for Harris County's benefit and any benefit Harris County received was an incidental benefit. *Id.* Third, the defendants argue that the claim that the defendants conspired to violate the DTPA must be dismissed because the County fails to state an underlying DTPA claim. *Id.*

Harris County responds that it provides insurance coverage that subsidizes prescription drugs for its 38,000 employees, retirees, and their dependents, and it purchases diabetes medications for inmates in the county's jails, and each insulin transaction involving the at-issue drugs is a separate DTPA violation. Dkt. 78. Harris County contends that it never purchased insulin in an aggregated amount or for a contracted price exceeding $100,000. *Id.* Also, the

4

County asserts that the transactional limit is an affirmative defense that the defendants have to plead and prove. *Id.* (citing *Eckman v. Centennial Savs. Bank*, 784 S.W.2d 672, 675 (Tex. 1990) (holding that the defendant has the burden of proving the applicability of a $25 million exception to "business consumer status" under the DTPA). At the bare minimum, Harris County contends there are genuine issues of material fact relating to whether the entire series of purchases was a set of transactions relating to the same project. As to the incidental beneficiary argument, Harris County argues that it pled that it benefitted from the transactions because it prioritizes the health and well-being of its employees, and it thus is a "consumer" under the DTPA for all of the transactions at issue. It notes that Texas law does not require that DTPA "consumers" are direct purchasers; instead, standing is established based on the individual's relationship to the transaction. *Id.* (citing *Kennedy v. Sale*, 689 S.W.2d 892 (Tex. 1985), and *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361 (Tex. 1987) ("A plaintiff establishes her standing as a consumer in terms of her relationship to a transaction, not by a contractual relationship with the defendant.")). As to the alleged conspiracy, Harris County asserts that it has properly pled that each defendant's conduct violated the DTPA and thus the defendants' argument that the conspiracy claims fails for lack of an underlying DTPA claim has no merit. *Id.*

The motion to dismiss is now ripe for consideration. The court will first set forth the legal standard and then consider the parties' arguments.

## II. LEGAL STANDARD

Neither party asserts in their briefing on this motion that a heightened pleading standard applies. *See* Dkts. 76, 78 (both noting the Rule 8(a)(2) pleading standard). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007).

In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

### III. ANALYSIS

**A.     Statutory Limit**

The court first considers whether Harris County's purchases of diabetes medications should be treated as separate, distinct transactions, or if all of the health care plan beneficiary purchases and all of the Harris County jail purchases should be aggregated into two separate "projects." The DTPA does not "apply to a cause of action from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence." Tex. Bus. & Com. Code Ann. § 17.49(g). The defendants argue that this provision "ensures that the DTPA remains a source of relief for small consumer transactions, not for multi-million-dollar disputes brought by a single, sophisticated plaintiff like Harris County." Dkt. 76. They note that Harris County asserts in the second amended complaint that it has spent tens of millions of dollars on diabetes products. *Id.*

6

Harris County alleges in its pleading that each at-issue purchase constitutes a separate DTPA violation, but the defendants contend this is a legal conclusion and does not correspond with the purpose of this portion of the statute, which was included by the legislature to relieve consumers in small transactions. Dkts. 68, 76. The defendants point out that courts broadly construe the "large-transactions exemption" of the DTPA and find that if sets of transactions relate to the same project, or are part of a "common undertaking," they should be valued collectively. Dkt. 76. Here, the defendants argue that all of Harris County's diabetes drug purchases relate to two "projects": health benefits for employees or medications for inmates. *Id.* Thus, according to the defendants, these transactions were part of a "common undertaking" even if they were for different medications at different times.

Harris County responds that none of the individual transactions involves consideration over $500,000. Dk. 78. Instead, the most Harris County paid for any of the at-issue transactions was $1,784.40. *Id.* It notes that the term "project" is not defined in the DTPA, but Texas courts have found that transactions relate to the same "project" if they are part of a "proposed or planned undertaking." Dkt. 78 (citing *Spraj Props. LLC v. Regions Bank*, No. 3:13-cv-3472, 2015 WL 11120528, at *7 (N.D. Tex. May 12, 2015), and *Glob. Int'l, LLC v. ProBalance, Inc.*, No. 3:15-cv-677, 2016 WL 6646225 (N.D. Tex. Nov. 9, 2016)). According to Harris County, this is typically in cases where there are defined business relationships between corporate entities to achieve a particular aim, such as a series of transactions related to the same construction loan or a long-running manufacturing and distribution relationship involving the same product. *See id.* Harris County asserts that the cases the defendants rely on involved multi-million-dollar corporations engaged in a series of nearly identical purchases of specific products from the same upstream suppliers in the normal course of business. *Id.* Harris County asserts that it is not a large

corporation, and it pays a substantial portion of the pharmaceutical purchases for 38,000 beneficiaries from its self-funded health care plan as well as medications for the jails. *Id.* Harris County contends that these are not repeat purchases for use in the ordinary course of business; they are discrete consumer transactions. *Id.* Harris County also asserts that the transactional limit is an affirmative defense and the defendants thus have the burden of proof. *Id.* (citing *Eckman*, 784 S.W.2d at 675). Harris County argues that at a bare minimum there are genuine issues of material fact relating to whether the entire series of purchases was a set of transactions relating to the same project.

In reply, the defendants first argue that it does not matter if section 17.49(g) is an affirmative defense because dismissal under Rule 12(b)(6) is still appropriate when dismissal based on an affirmative defense is appropriate based on the face of the complaint. Dkt. 80 at 2 n.1 (citing *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020)). They state that the County's position that each transaction should be counted separately would render the statutory limits in the DTPA meaningless. Dkt. 80. They argue that the County cannot reconcile its $27 million in insulin purchases with the prohibition on claims arising from a set of transactions relating to the same project that exceed $500,000. *Id.* The defendants again assert that the County's allegations establish the $27 million in insulin purchases relate to two projects (1) subsidizing insulin purchases by beneficiaries of the County's health plan; and (2) purchasing insulin for inmates at HB jails. *Id.* They contend that the purpose of § 17.49(g) is to remove litigation between big businesses from the scope of the DTPA. *Id.* (citing *Spraj Props.* LLC, 2015 WL 11120528, at *7). They argue that in construing § 17.49(g), courts do not focus on the types of differences in the individual transactions noted by the County and instead focus on whether the transactions are part of a "common undertaking." *Id.* (citing *Nestlé Purina Petcare Co. v. Blue*

8

*Buffalo Co. Ltd.*, 181 F. Supp. 3d 618, 635–36 (E.D. Mo. 2016) and *Obermeyer Hydro Accessories, Inc. v. CSI Calendering, Inc.*, No. 14-cv-00184-RM-KMT, 2015 WL 506896, at *3–4 (D. Colo. Feb. 5, 2015)).

While the court finds Harris County's argument that section 17.49(g) is an affirmative defense persuasive, *see Eckman*, 784 S.W.2d at 675 (finding a similar exception to consumer status is an affirmative defense), the court agrees with the defendants that dismissal under Rule 12(b)(6) may still be appropriate if the defense appears on the face of the complaint. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). However, here, it is plausible that after discovery it will make sense to divide the transactions into groups that have total consideration for each set of transactions relating to the same project of less than $500,000. It obviously depends on how one defines the "project."[1] The defendants favor a broad definition that groups every purchase of diabetes medication from each defendant for every type of employee together and then lumps all purchases for Harris County jails together. Harris County favors a narrow definition that looks at each transaction separately. The court suspects that the correct answer lies somewhere in the middle, but discovery will be necessary to look at the similarities of the purchases and determine whether they relate to the same project. Is the project providing diabetes drugs to employees, in general? Or should, for example, Eli Lilly drugs be considered

---

[1] In the two cases that the defendants cite as supporting a "common undertaking," the courts found that it was clear from the complaints that the defendants in those cases involved "an ongoing project worth over $500,000." *See Nestlé Purina Petcare*, 181 F. Supp. 3d at 635–36 (considering a claim under the Texas DTPA and finding dismissal appropriate because a series of transactions to purchase chicken and turkey meal amounting to more than $63 million was a "series of ongoing related transactions constituting a project worth over $500,000" when the third-party complaint alleged a "'sustained course of action in selling the Adulterated Meal as high-quality and single-ingredient chicken or turkey meal for four years'"); *Obermeyer Hydro*, 2015 WL 506896, at *3 (considering a claim under the Texas DTPA, noting that the statute does not define "project" or "transaction," and holding that it "was of no importance that Plaintiff engaged in 'discrete purchase orders'" because the " 'project' must be defined in relation to both parties").

separately from Novo Nordisk drugs and Sanofi-Aventis U.S. drugs?  Are they even the same type of drugs?[2]  Do they provide the same health benefits to Harris County employees?  The court finds that, in this case, it is inappropriate to attempt to resolve these questions without an evidentiary record.  *Cf. Cotton Patch Café, Inc. v. Micros Sys., Inc.*, No. MJG-09-3242, 2012 WL 5986773, at *8 (D. Md. Nov. 27, 2012) (determining that there were issues of material fact regarding whether purchases of computer software for all Cotton Patch restaurants was a "series of purchases" over $500,000 "relating to the same project" under the Texas DTPA or whether each restaurant location was a separate project).  The motion to dismiss based on section 17.49(g) is **DENIED.**

### B.      Purchased for Harris County's Benefit or Incidental

The court next considers whether Harris County is a "consumer" under the DTPA that purchased goods for its own benefit or whether it is not a "consumer" because the benefits of the purchase of the goods (diabetes medications) were only incidental to the County.  Under the DTPA, a "consumer" is "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more."  Tex. Bus. & Com. Code Ann. § 17.45(4).  "'[T]he key principle in determining consumer status is that the goods or services purchased must be an *objective* of the transaction, not merely incidental to it.'"  *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 768 (5th Cir. 2016) (quoting *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 166 (Tex. App.—Austin 1996, no writ)).

---

[2] For instance, Harris County alleges in the second amended complaint that Eli Lilly's diabetes medications include Humulin N, Humulin R, Humalog, Trulicity, and Basaglar. Dkt. 68. Sanofi-Aventis U.S.'s insulins and diabetes medications paid for by Harris County and relevant to this case are Lantus, Toujeo, Soliqua, and Apidra. *Id.* Novo Nordisk's are Novolin R, Novolin N, Novolog, Levemir, Tresiba, Victoza, and Ozempic. *Id.*

10

The defendants argue that, to the extent the County bases its DTPA claims on subsidizing its employees' purchases of diabetes medications, the County is a third party whose benefit from the purchases was merely incidental. Dkt. 76. The defendants assert that the County's employees are the consumers, and the purchases were for their benefit, not the County's. *Id.*

Harris County asserts that because it has a self-funded plan, it paid for the drugs and was overcharged, and each purchase directly benefitted the County because it improved the health and well-being of its employees. Dkt. 78. Harris County points out that the second amended complaint does not state that the County is a third party to these transactions and that the benefits to it are merely incidental; instead, the second amended complaint states that the County benefitted from the transactions because it prioritizes the health and well-being of its employees. *Id.* Harris County notes that there can be multiple consumers in one transaction, and the County's employees were only involved in the transactions with these defendants because they participated in the County's self-funded healthcare plan. *Id.*

In reply, the defendants argue that "consumer" status requires the County to be a direct beneficiary and that the asserted benefit to the County of healthy employees is entirely derivative of the benefit to the employees themselves. Dkt. 80. They assert that this derivative benefit is at best incidental to the actual consumers who made prescription drug purchases. *Id.*

In *Wellborn v. Sears, Robuck & Co.*, the Fifth Circuit considered whether a fourteen-year-old boy who was killed when an automatic garage door opener malfunctioned met the DTPA's definition of "consumer." 970 F.2d 1420, 1426 (5th Cir. 1992). The case had been tried to a jury, the plaintiff won, and the defendants appealed. *Id.* The defendants argued that the boy was not a consumer under the DTPA because he was an incidental user of the garage door opener, as he did not even drive and thus could not use it for its primary purpose. *Id.* The Fifth Circuit noted that

11

"[d]irect contractual privity between an individual and the defendant is not a consideration in determining an individual's status as a consumer under the DTPA." *Id.* Instead, the court must determine whether a litigant has standing as a consumer by considering the person's "'relationship to the transaction.'" *Id.* (quoting *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 368 (Tex. 1987)). Consumer status is not confined to the purchaser of the product at issue. *Id.* (citing *Kennedy*, 689 S.W.2d at 892 (finding that an employee whose employer purchased a group insurance policy was a consumer in relation to the policy even though he did not actually purchase it himself)). In *Wellborn*, the Fifth Circuit concluded that even though the boy did not purchase the garage door opener or enter into a contractual relationship relating to it, one of the reasons his mother purchased it was for extra security for the boy, who regularly used it, and he therefore "acquired the garage door opener and the benefits it provided." *Id.* He qualified as a consumer under the DTPA. *Id.*

The court finds that it is plausible, given the County's relationship to the transactions at issue here, that the benefits it derives from the purchases of diabetes medication for is employees is not merely incidental to the overall benefit to the employees. While the County obviously did not use the drugs, it is plausible that the employees purchased the drugs, in part, so they would be able to continue working as healthy employees of the County and that, in a way, the medications were partially purchased for the County's benefit, much like the plaintiff in *Wellborn* purchased to garage door opener for her son's benefit. The extent to which these medications benefitted the County likely will be revealed through discovery. It would thus be premature to dismiss this claim at this stage. The motion to dismiss the DTPA claim because the County is only an incidental beneficiary and thus not a consumer under the DTPA is **DENIED**.

12

**C.     Conspiracy**

The court's final consideration is whether Harris County's conspiracy to violate the DTPA claim survives. The defendants argue that the County does not plausibly allege an underlying DTPA violation to support the alleged conspiracy and that the court should therefore dismiss the claim for conspiracy to violate the DTPA. Dkt. 76 at 9. The court, however, has found that the County plausibly pled an underlying claim. Therefore, this argument has no merit. The motion to dismiss the conspiracy claim is **DENIED**.

## IV. CONCLUSION

The defendants' motion to dismiss Harris County's DTPA claims is **DENIED**.

Signed at Houston, Texas on March 25, 2021.

_____
Gray H. Miller
Senior United States District Judge