**IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

COUNTY OF HARRIS, TEXAS,

*Plaintiff,*

v.

ELI LILLY AND COMPANY et al.,

*Defendants.*

Civil Action No. 4:19-cv-04994

**DEFENDANT OPTUMRX, INC.'S RULE 12(b)(6) MOTION TO DISMISS
<u>HARRIS COUNTY'S FOURTH AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ............................................................................. 1

NATURE AND STAGE OF THE PROCEEDING...................................................... 4

BACKGROUND .......................................................................................................... 4

STATEMENT OF THE ISSUES.................................................................................. 6

LEGAL STANDARD................................................................................................... 7

ARGUMENT ................................................................................................................ 8

    I.     THE INDIRECT-PURCHASER RULE BARS THE COUNTY'S
         CLAIMS. ...................................................................................................... 8

         A.     The indirect-purchaser rule applies to the County's claims against
                OptumRx. ...................................................................................... 8

         B.     The co-conspirator exception does not apply. .......................... 12

    II.    THE COUNTY'S RICO CLAIMS, WHICH ARE BASED ON
         ALLEGED MAIL- AND WIRE-FRAUD, ALSO FAIL FOR OTHER
         REASONS. .................................................................................................. 14

    III.    THE COUNTY'S UNJUST-ENRICHMENT AND MONEY-HAD-AND-
         RECEIVED CLAIMS ALSO FAIL. ...................................................... 19

    IV.    THE COUNTY HAS NOT ALLEGED A PLAUSIBLE DECEPTIVE
         TRADE PRACTICES ACT CLAIM..................................................... 19

    V.    THE CIVIL CONSPIRACY CLAIM ALSO FAILS. .......................... 20

CONCLUSION............................................................................................................ 21

CERTIFICATE OF SERVICE ................................................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Abbott Labs. (Ross Labs. Div.) v. Segura*,
   907 S.W.2d 503 (Tex. 1995) ...........................................................................8, 15

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ........................................................................................16, 18

*Apple Inc. v. Pepper*,
   139 S. Ct. 1514 (2019) ....................................................................................10, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................3, 7, 8, 14

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
   65 F.3d 1406 (7th Cir. 1995) ..................................................................................5

*Davis v. Wells Fargo Bank, N.A.*,
   2014 U.S. Dist. LEXIS 18786 (S.D. Tex. Feb. 14, 2014) ....................................20

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
   784 F. Supp. 2d 508 (D.N.J. 2011) ...................................................................8, 17

*Doss v. Homecomings Fin. Network, Inc.*,
   210 S.W.3d 706 (Tex. App. 2006) ........................................................................20

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
   223 F.3d 12, 21 (1st Cir. 2000) .............................................................................19

*EuroTec Vertical Flight Sols., LLC v. Safran Helicopter Engines S.A.S.*,
   2019 WL 3503240 (N.D. Tex. Aug. 1, 2019) .......................................................21

*FMC Int'l A.G. v. ABB Lummus Glob., Inc.*,
   2006 WL 213948 (S.D. Tex. Jan. 24, 2006) .........................................................17

*Hemi Grp., LLC v. City of N.Y.*,
   559 U.S. 1 (2010) ..................................................................................................17

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992) ........................................................................................15, 18

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ....................................................................................... *passim*

*In re Beef Industries Antitrust Litigation*,
    600 F.2d 1148 (5th Cir. 1979) .......................................................................2, 13

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) .............................................................14

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
    997 F. Supp. 2d 526 (N.D. Tex. 2014) ..............................................................14

*Meadows v. Hartford Life Ins. Co.*,
    492 F.3d 634 (5th Cir. 2007) .............................................................................21

*Morlock, LLC v. Bank of Am., N.A.*,
    2013 U.S. Dist. LEXIS 131604 (S.D. Tex. Sep. 13, 2013) ...............................22

*New Prime, Inc. v. Eaton Corp.*,
    2017 WL 5992466 (W.D. Mo. Mar. 16, 2017)...........................................8, 9, 15

*Royal Printing Co. v. Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) .............................................................................13

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) .............................................................................8

*Tilton v. Marshall*,
    925 S.W.2d 672 (Tex. 1996).............................................................................21

*Tuosto v. Philip Morris USA Inc.*,
    2007 U.S. Dist. LEXIS 61669 (S.D.N.Y. Aug. 21, 2007)..................................19

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
    2021 U.S. Dist. LEXIS 90488 (E.D. Pa. May 12, 2021) ....................................13

## SUMMARY OF THE ARGUMENT

The Fourth Amended Complaint undermines Harris County's claims against OptumRx. While injecting an array of new allegations against other defendants, the County has deleted key factual allegations that this Court previously held supported the County's claims against OptumRx. With those allegations gone, the County's claims against OptumRx collapse and should be dismissed.

In its First, Second, and Third Amended Complaints, the County alleged that (i) it directly paid OptumRx for insulin products (Dkt. 20 ¶ 302; Dkt. 68 ¶ 302; Dkt. 110 ¶ 301), (ii) it adopted an OptumRx formulary offering (a list of covered drugs) for its health plan (Dkt. 20 ¶ 301; Dkt. 68 ¶ 301; Dkt. 110 ¶ 300), and (iii) OptumRx contracted with the County for PBM services (Dkt. 20 ¶ 300; Dkt. 68 ¶ 300; Dkt. 110 ¶ 299). The Court relied on those allegations in denying OptumRx's motions to dismiss the County's earlier complaints. *See* Dkt. 66.

In its order denying OptumRx's first motion to dismiss, for instance, the Court recognized that "only direct purchasers can bring suit" under federal antitrust and RICO laws. Dkt. 66 at 27. OptumRx and the other defendant pharmacy benefit managers (PBMs) argued that *Illinois Brick*'s indirect-purchaser rule barred the County's claims, but the Court concluded that the County had alleged "that it pays the PBM Defendants *directly* for the overcharges of the diabetes medications at issue in this case." *Id.* at 29 (emphasis in Court's opinion). The Court also relied on the County's allegations that "the PBM Defendants sell diabetes medications *directly* [to Harris County] through their own mail-order pharmacies." *Id*. at 31 (emphasis added). Accordingly, the Court held that the indirect-purchaser rule did not apply because Harris County alleged that (1) it paid PBMs "directly for alleged overcharges" and (2) PBMs "supply some of the at-issue drugs directly to Harris County through the PBM Defendants' mail-order pharmacies." *Id.* at 32.

Those allegations no longer appear in the Fourth Amended Complaint—at least not about OptumRx. Facing the threat of Rule 11 sanctions, the County has withdrawn allegations that it directly paid OptumRx for insulin (whether in OptumRx's capacity as a PBM or mail-order pharmacy) or that it adopted an OptumRx formulary offering. Without a factual allegation that the County directly paid OptumRx for insulin, the indirect-purchaser rule bars the County's claims against OptumRx.

The County tries to get around that problem by labeling (for the first time) Cigna—an entity that the County allegedly did contract with—as OptumRx's co-conspirator. Dkt. 127 ¶ 411. The County includes that label, without any factual allegations supporting it, in a transparent attempt to invoke the so-called co-conspirator exception to the indirect-purchaser rule. But there is a problem: As the County has already conceded, that exception applies only if the supposed co-conspirator is a named defendant. *See* Dkt. 48 (County arguing that "[t]he Fifth Circuit refused to apply the co-conspirator exception to *Illinois Brick* [in *In re Beef Industries Antitrust Litigation*, 600 F.2d 1148 (5th Cir. 1979)] because the alleged co-conspirator packers were not named as defendants"). After two years and five iterations of the Complaint, the County has never named Cigna as a defendant, so the threadbare allegations about Cigna are irrelevant. They also fail Rule 8's pleading standard: The County has not pleaded any facts plausibly suggesting that Cigna conspired with OptumRx or anyone else. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The County cannot circumvent the indirect-purchaser rule, so this Court should dismiss all of its claims against OptumRx.

Beyond that, the County's claims against OptumRx suffer from other defects now that the County has withdrawn allegations that the County paid OptumRx for insulin and adopted an OptumRx formulary offering.

2

**RICO**. Indirect-purchaser rule aside, the County's RICO mail-and-wire-fraud predicates require allegations (and ultimately proof) that OptumRx's alleged fraudulent statements directly caused the County's claimed financial injuries. The County previously alleged that OptumRx's purported fraudulent statements caused it to overpay OptumRx. But in its Fourth Amended Complaint, the County no longer alleges that it paid OptumRx or contracted with OptumRx, so it is no surprise that the County has not alleged facts (plausible or particularized) about how OptumRx's alleged misstatements directly caused its claimed financial injuries. Nor could it. The County voluntarily withdrew its common-law fraud claim when it purged its allegations against OptumRx, and it should have done the same with its RICO claims.

**Unjust-enrichment and money-had-and-received**. The County's equitable claims require, among other things, allegations that the County conferred a direct benefit on OptumRx. This Court previously found that the County satisfied that direct-benefit requirement by alleging that it directly paid OptumRx for insulin. With those allegations now gone, there is no basis in the Fourth Amended Complaint for sustaining the County's unjust-enrichment and money-had-and-received claims.

**Deceptive Trade Practices Act**. The DTPA requires allegations that the County relied on a deceptive act that harmed it. But the County no longer alleges that it purchased insulin from OptumRx, contracted with OptumRx, adopted an OptumRx formulary, or took any specific action in reliance on anything that OptumRx said or did.

**Civil Conspiracy**. Civil conspiracy is a derivative tort, so if the underlying tort claims fail, so does the conspiracy claim. Because the County's claims fail across the board, the civil-conspiracy claim must be dismissed. The conspiracy claim is also implausible and unsupported by factual allegations.

3

## NATURE AND STAGE OF THE PROCEEDING

On September 27, 2021, the County filed a Fourth Amended Complaint that eliminates key allegations against OptumRx: The County no longer alleges that it paid OptumRx directly for insulin products or that it adopted an OptumRx formulary offering. Dkt. 127. Those changes undermine the County's claims against OptumRx, so OptumRx now moves to dismiss the Fourth Amended Complaint.

## BACKGROUND

Harris County filed this lawsuit in 2019 in state court. Dkt. 1 at App'x 8–97 (Pet.). After removal to this Court on January 31, 2020, the County filed its First Amended Complaint. Dkt. 20. Back then, the County alleged that "[a]t different periods during the relevant period, Harris County utilized each PBM Defendant's [including OptumRx's] formularies with respect to the at issue drugs." *Id.* ¶ 301. The County also alleged that it made payments directly to each PBM, including OptumRx. *Id.* ¶ 302 ("PBM Defendants set the price by which Harris County paid for the drugs utilized by Harris County's Beneficiaries, including the at issue diabetes medications. PBM Defendants [including OptumRx] also received payments made by Harris County for the at issue diabetes medications . . . .").

The PBMs jointly moved to dismiss the County's First Amended Complaint, arguing that, among other things, the County was an indirect purchaser that lacked standing to assert its claims against the PBMs. Dkt. 41 5–9. In response, the County argued that it was a direct purchaser because "Harris County Pays PBM Defendants for Diabetes Medications and Not Another Party in the Chain of Distribution." Dkt. 48 at 13 (Section III.A. heading). The County highlighted its allegations that "PBM Defendants also receive payments made by Harris County for the at-issue diabetes medications" (*id.* at 15) and cited cases in which courts allowed downstream purchasers

to press claims if the plaintiff's money "went directly" to the defendant. *Id.* at 16 (citing *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1414 (7th Cir. 1995)). The County argued that "[l]ike in [its cited cases], Harris County paid PBM Defendants directly, and thus the County is permitted to bring its claims regardless of where they are situated within the market." *Id.* at 17.

After the County made those arguments in its briefing, OptumRx contacted the County in July and August 2020, asking the County to provide the factual basis for its assertions. Dkt. 123-2. In an August 31, 2020 email that the County previously filed with this Court, OptumRx explained that despite redoubling its investigation, it "[had not] uncovered evidence connecting OptumRx with Harris County's core allegations," including that the County had paid OptumRx for insulin. *Id.*

In September 2020, the Court denied the PBMs' motion to dismiss. Addressing the PBMs' indirect-purchaser arguments, the Court analyzed the County's allegations that "Harris County . . . allegedly *pays PBMs* to manage the administrative burden of its pharmaceutical program" (Dkt. 66 at 30 (emphasis added)) and that "the PBM Defendants sell diabetes medications *directly* [to Harris County] through their own mail-order pharmacies." *Id.* at 31 (emphasis added). In rejecting the PBMs' indirect-purchaser argument on the pleadings, the Court concluded that "the allegations that Harris County pays its overcharges *directly* to the PBM Defendants are dispositive at [the motion-to-dismiss] stage." *Id.* at 31. The Court based its decision in part on the County's allegations that it paid each PBM directly for mail-order prescriptions supplied by the PBM. *Id.* at 32 (crediting allegations that the PBM Defendants "suppl[ied] some of the at-issue drugs directly to Harris County through the PBM Defendants' mail-order pharmacies").

The County filed its Second Amended Complaint on October 31, 2020, continuing to allege that it paid OptumRx directly for insulin and had adopted an OptumRx formulary offering. Dkt. 68 ¶ 301–02.

On July 27, 2021, the deadline for the County to amend its pleadings, the County filed its Third Amended Complaint. Dkt. 110. Once again, the County alleged that it paid OptumRx directly for insulin and adopted an OptumRx formulary. *Id.* ¶ 300. Given the County's refusal to withdraw those allegations, OptumRx served a Rule 11 motion on the County on July 30, 2021. Dkt. 122-2.

On August 25, 2021, the County moved for leave to file a Fourth Amended Complaint. Dkt. 118. In its motion, the County explained that it had revised its allegations against OptumRx in response to OptumRx's "Rule 11 threat." Dkt. 119 at 2. Among other changes in the Fourth Amended Complaint, the County eliminated allegations that the County paid OptumRx directly for insulin products or adopted an OptumRx formulary offering.

## STATEMENT OF THE ISSUES

1.     Does the bar on indirect-purchaser suits first announced in *Illinois Brick* foreclose the County's claims against OptumRx given that the County no longer alleges that it paid OptumRx directly for insulin?

2.     Should the Court dismiss the County's RICO claims against OptumRx because the County has not alleged particularized facts that OptumRx made a fraudulent statement that directly caused the County's claimed financial injury?

3.     Should the Court dismiss the County's unjust-enrichment and money-had-and-received claims because, without an allegation that the County paid OptumRx, the County fails to allege that OptumRx unlawfully retained a benefit that the County conferred on it?

4.      Should the Court dismiss the County's DTPA claim against OptumRx because the County failed to plead facts that OptumRx committed an underlying fraud that the County relied on to its harm (and even withdrew its fraud claim against OptumRx)?

5.      Should the Court dismiss the civil conspiracy claim against OptumRx because the County failed to allege an underlying tort?

## **LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In a case alleging conspiracy, the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft 'to sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quoting Rule 8).

The County's fraud-based claims (including its RICO claims) must also satisfy Rule 9(b)'s heightened pleading standard. The County must allege with particularity the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). The County must also allege causation with particularity. *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 530 (D.N.J. 2011).

<u>**ARGUMENT**</u>

**I.   THE INDIRECT-PURCHASER RULE BARS THE COUNTY'S CLAIMS.**

In its Fourth Amended Complaint, the County excised allegations that it paid OptumRx for insulin and adopted an OptumRx formulary offering. The Fourth Amended Complaint now confirms that the County is an indirect purchaser as to OptumRx. Accordingly, the County's claims against OptumRx should be dismissed.

**A.     The indirect-purchaser rule applies to the County's claims against OptumRx.**

As this Court previously held, under *Illinois Brick* "only direct purchasers can bring suit against alleged antitrust violators." Dkt. 66 at 28 (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)). That rule, this Court held, "applies to RICO claims." *Id.* It also applies to the County's DTPA and other state-law claims. *See Abbott Labs. (Ross Labs. Div.) v. Segura*, 907 S.W.2d 503, 504 (Tex. 1995); *see also New Prime, Inc. v. Eaton Corp.*, 2017 WL 5992466, at *3 (W.D. Mo. Mar. 16, 2017). The County's Fourth Amended Complaint makes clear that the indirect-purchaser rule bars the County's claims against OptumRx.

OptumRx first raised the indirect-purchaser rule in the PBM Defendants' first motion to dismiss. Responding to that argument, the County urged this Court to deny the motion to dismiss because the County had alleged that it "paid PBM Defendants directly." Dkt. 41 at 17. In ruling on the motion, this Court relied on the County's allegations that it was a direct purchaser. It credited the County's allegations that the County "pays PBMs to manage the administrative burden of its pharmaceutical program" (Dkt. 66 at 30) and that "the PBM Defendants sell diabetes medications directly [to Harris County] through their own mail-order pharmacies." *Id.* at 31. In the end, the Court held that the indirect-purchaser rule did not apply "[b]ecause Harris County [had alleged that] 1) it pays the PBM Defendants directly for alleged overcharges and 2) the PBM Defendants supply some of the at-issue drugs directly to Harris County through the PBM

Defendants' mail order pharmacies." Dkt. 66 at 32. The touchstone was the County's allegations that it directly paid each PBM.

In its Fourth Amended Complaint, the County now alleges that it directly paid only the two other PBMs—but not OptumRx. *See* Dkt. 127 ¶ 410 ("In providing these PBM services to Harris County, Aetna RX and CVS Caremark also *received payments for the at-issue drugs* and, in turn, reimbursed the pharmacies that dispensed drugs to Harris County beneficiaries." (emphasis added)); *id.* ¶ 413 ("In providing these services to the [sic] Harris County, Express Scripts and Cigna Pharmacy Management set the amount the County paid for the at-issue drugs . . . *received payments for the at-issue drugs* and, in turn, reimbursed the pharmacies that dispensed the drugs to Harris County beneficiaries." (emphasis added)).[1] The County has withdrawn those allegations against OptumRx. Instead, the County alleges only that OptumRx "managed the County's pharmacy network, which included processing pharmacy claims for prescriptions dispensed to Harris County's Beneficiaries, and operated mail order pharmacies that delivered prescription drugs to Harris County's Beneficiaries." *Id.* ¶ 411.

That allegation against OptumRx is insufficient to overcome the indirect-purchaser bar. That OptumRx allegedly "managed" a pharmacy network and "delivered" drugs to Harris County beneficiaries (as opposed to the County itself) does not make the County a direct purchaser. The direct-purchaser analysis focuses on payment. *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1522 (2019). The County does not allege that it ever contracted with OptumRx. And it no longer alleges that it

---

[1] OptumRx cannot speak to the veracity of those allegations; it uses them only to demonstrate the deficiencies in the County's pleadings as to OptumRx.

directly paid OptumRx.[2] Absent an allegation that the County paid OptumRx directly for insulin, the County does not (and cannot) qualify as a direct purchaser.

The County previously tried to draw parallels between its earlier allegations and the allegations in the Supreme Court's *Apple Inc. v. Pepper* decision. In *Apple*, the Supreme Court held that consumers purchasing apps through Apple's app store were direct purchasers notwithstanding that the app developers, not Apple, set the retail price. 139 S. Ct. at 1521–22. The critical fact, the Court held, was that consumers directly paid Apple and there was no intermediary in the distribution chain. *Id.* In earlier briefing, the County argued that "like the app store plaintiffs in *Apple*—the County pays the PBMs, and not some other entity in the distribution chain, for the diabetes medications at issue." Dkt. 48 at 14. This Court credited that analysis in light of the allegations in the First Amended Complaint. Dkt. 66 at 31 ("Like in *Apple* where the Court was persuaded by the fact that the plaintiff consumers paid the overcharges directly to Apple, the allegations that Harris County pays its overcharges directly to the PBM Defendants are dispositive at this stage."). But that argument now crumbles because, unlike in *Apple,* the County no longer alleges that it paid OptumRx directly for the products at issue. If anything, the County's allegations are now the inverse of *Apple*. The County does not allege that OptumRx set the price that the County paid *or* received any payment from the County directly. Under "[t]he bright-line rule of *Illinois Brick*," the County cannot maintain claims against OptumRx because the County is "two or more steps removed" from any payment. *Apple*, 139 S. Ct. at 1521.

In its order granting the County leave to file its Fourth Amended Complaint, this Court pointed back to its statement in its earlier motion-to-dismiss order crediting the County's allegation

---

[2] On meet-and-confer calls with OptumRx's counsel, the County's counsel has confirmed that the Fourth Amended Complaint does not allege that the County has ever paid OptumRx directly.

that the "the PBM Defendants supply some of the at-issue drugs directly to Harris County through [their] mail-order pharmacies." Dkt. 126 at 7–8 (quoting Dkt. 66 at 32). OptumRx never understood that statement to mean that merely delivering a product, without receiving payment directly from the plaintiff, creates a direct-purchaser relationship. For good reason: There is no support in the cases for that proposition. In its earlier opinion, this Court did not hold that the County could be a direct purchaser without allegations that it directly paid each PBM. On the contrary, the Court reasoned that because the County "allege[d] that it pays the PBM Defendants *directly* for the overcharges of the diabetes medications at issue in this case, 'not an intervening distributor or other link in the distribution chain,'" the indirect-purchaser rule did not apply. Dkt. 66 at 29.

Now there is no allegation of a direct payment from the County to OptumRx. At most, the County alleges that OptumRx shipped prescriptions to beneficiaries, which is not enough to overcome the indirect-purchaser rule. *Compare* Dkt. 127 ¶ 411 (alleging that OptumRx "operates mail order pharmacies that *delivered* prescription drugs to Harris County's beneficiaries"), *with id.* ¶ 413 (alleging that "Express Scripts and Cigna Pharmacy Management *set the amount the County paid* for the at-issue drugs" and "*received payments for the at-issue* drugs") (emphasis added). The County does not allege that the County paid OptumRx directly for any prescription that OptumRx allegedly delivered to a Harris County beneficiary. *See* Dkt. 127 ¶ 411. The indirect-purchaser rule bars the County's claims.

The County's conspiracy allegations have no impact on the indirect-purchaser analysis. In its substantive RICO claims, the County alleges separate "enterprises" between OptumRx and each manufacturer (Dkt. 127 ¶¶ 489(3), 553(3), 617(3)) but does not allege facts plausibly suggesting that OptumRx conspired with the other PBMs. The County does not, for instance, seek to broaden

11

those siloed "enterprises" through its RICO conspiracy count. *See* Dkt. 127 ¶ 679 (alleging that each defendant "knowingly agreed to facilitate the Insulin Pricing Scheme *through their respective RICO enterprises*") (emphasis added). The indirect-purchaser rule bars all of the County's claims.

### B. The co-conspirator exception does not apply.

Blocked by a straight-forward application of the indirect-purchaser rule, the County has pivoted to alleging that Cigna's contractual relationship with OptumRx was a "conspiracy," presumably hoping that it can rely on the so-called co-conspirator exception.

According to the Fourth Amended Complaint, Cigna has contracted with the County and has been responsible for administering the County's health plan since 2017. Dkt. 127 ¶¶ 408, 411. But the County has not sued Cigna. The County cannot invoke the co-conspirator exception to the indirect-purchaser rule because Cigna is not a defendant. In the Fifth Circuit, the co-conspirator exception does not apply if the plaintiff has not *named* the alleged co-conspirator as a defendant. *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1163 (5th Cir. 1979) ("Whatever the merits of the arguments for such an exception in general, we do not think that the reasoning of *Illinois Brick* permits recognizing the exception when, as here, the alleged co-conspirator middlemen are not named as parties defendant" because defendants remain at risk of "overlapping liability."); *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 328 n.9 (9th Cir. 1980) ("[T]he Fifth Circuit has ruled that a plaintiff cannot avoid the *Illinois Brick* rule where the co-conspiring independent middleman is not named as a party defendant, because the middleman could later sue the defendant on his own account and subject him to multiple liability."); *see also Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2021 U.S. Dist. LEXIS 90488, at *24 (E.D. Pa. May 12, 2021) ("[T]o invoke the co-conspirator exception and successfully sue an upstream seller or manufacturer for an overcharge, a plaintiff in the Third Circuit must name as a defendant the intermediary co-conspirator from which it purchased the product."). The County has conceded as

much, acknowledging that allegations about a non-defendant "co-conspirator" cannot serve as the basis for applying the co-conspirator exception. Dkt. 48 at 19 (distinguishing *In re Beef* because there "[t]he Fifth Circuit refused to apply the co-conspirator exception to *Illinois Brick* because the alleged co-conspirator packers *were not named as defendants*." (emphasis added)).

Even if the County had named Cigna as a defendant, the County's claims would still fail because the County has not pleaded factual allegations plausibly suggesting that Cigna was a co-conspirator, much less a co-conspirator with OptumRx. The County asserts a few new Cigna-related allegations, including alleging a handful of industry meetings (all before Cigna contracted with the County) that Cigna supposedly attended. Dkt. 127 ¶¶ 299, 301. But even if Cigna attending some meetings, attending an industry meeting does not give rise to a plausible inference of conspiracy. *See Twombly*, 550 U.S. at 567 n.12 (rejecting notion that "belong[ing] to various trade associations" plausibly suggested conspiracy); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 541 (N.D. Tex. 2014) ("[T]he fact that defendants' decision-makers had '[t]he opportunity to meet and conspire' at trade shows, standing alone, isn't suspicious."); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("Attendance at industry trade shows and events is presumed legitimate and is not a basis from which to infer a conspiracy, without more.") (citation omitted). Regardless, the County does not attempt to connect those allegations to OptumRx. At best, the County alleges that Cigna contracted with OptumRx or its "predecessor" Catamaran for access to OptumRx's pharmacy network and for OptumRx to ship mail-order prescriptions. Dkt. 127 ¶¶ 179, 411. That is nowhere close to plausibly alleging that OptumRx and Cigna conspired to inflate insulin prices. *Twombly*, 550 U.S. at 557–58.

As to OptumRx, the County is an indirect purchaser, and no exception to the indirect-purchaser rule applies. *Illinois Brick* bars all of the County's claims against OptumRx. Dkt. 66 at 28 ("The court holds that the *Illinois Brick* Court's bar on indirect-purchaser suits applies to RICO claims."); *New Prime, Inc.*, 2017 WL 5992466, at *3 (courts "overwhelmingly hold that a plaintiff cannot proceed with state common-law claims, such as unjust enrichment, based on the same conduct that formed the basis of barred antitrust claims."); *Abbott Labs*, 907 S.W.2d at 504 ("We hold that indirect purchasers cannot recover under the DTPA upon allegations on which recovery would have been barred if brought under the Texas Free Enterprise and Antitrust Act."); *see also* PBM Def. Mot. to Dismiss, Dkt. 41 at 9.

## II. THE COUNTY'S RICO CLAIMS, WHICH ARE BASED ON ALLEGED MAIL- AND WIRE-FRAUD, ALSO FAIL FOR OTHER REASONS.

The County's RICO theory also fails for several other independent reasons. Without allegations that the County had a direct relationship with OptumRx, the County cannot plead 9(b)-quality facts that OptumRx's alleged "misrepresentations" were the "but for" or "proximate" cause of its claimed financial injury. 18 U.S.C. § 1964(c); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO plaintiffs must plead and prove that "the defendant's violation not only was a 'but for' cause of [their] injury, but was the proximate cause as well").

In its opposition to OptumRx's original motion to dismiss, the County argued that it had adequately pleaded fraud and causation by alleging that it was a foreseeable victim of the alleged scheme. Dkt. 48 at 34–35. When the PBM Defendants argued that Harris County contracted with insurance companies, not PBMs, the County argued the following:

> The fact that Harris County may have contracted with insurance companies (within the same corporate families as PBM Defendants) to manage its overall health benefit plan, does not contradict the County's allegations that the PBMs administered Harris County's *pharmacy* benefit plan, and in doing so, set the price the County paid for diabetes medications and received the County's payments for these drugs. FAC ¶¶ 293–302.

Dkt. 48 at 35. The County has since retracted those allegations against OptumRx.

Crediting those now-withdrawn allegations, this Court concluded at that time that the County had adequately pleaded causation because "the PBM Defendants' drug formulary lists were utilized by Harris County to determine pricing for the at-issue medications, and Harris County was allegedly purposefully overcharged by the PBM Defendants and paid that overcharge directly to the PBM Defendants." Dkt. 66 at 23. The Court also ruled that the County's causation allegations were sufficient because the County had alleged that it "relied on PBM Defendants' alleged misrepresentations" that they would "save Harris County money by negotiating on its behalf for at issue drugs," that their "formulary lists were created and maintained to promote client safety and health," and that the prices the County paid "resulted from competitive market forces." *Id.* at 23–24.

The County's changes to the Fourth Amended Complaint remove the factual foundation for this Court's previous decision as to OptumRx. Through the Fourth Amended Complaint, the County recants three factual allegations that this Court previously relied on: There is no longer any allegation (1) that Harris County adopted an OptumRx formulary offering (*id.* ¶ 411), (2) that OptumRx performed rebate-related services for the County (*id.*), or (3) that Harris County contracted with or paid OptumRx directly. *Id.* ¶¶ 410, 411, 413.

With those concessions, the County's RICO claim fails for at least two reasons. First, given that there is no allegation that OptumRx provided formulary- or rebate-related services to the County or its health plan, there is no factual allegation (whether plausible or particularized) that OptumRx directly caused the County's claimed financial injuries. *See Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation,

the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

Although the County alleges that OptumRx made representations about the services that it provided to others, the County no longer alleges that it contracted with OptumRx, adopted any OptumRx formulary offering, or received rebate-related services from OptumRx. Accordingly, even taking as true the County's allegations of misstatements—none of which satisfies Rule 9(b)'s requirements—the County has not pleaded facts drawing a direct line between OptumRx's "misrepresentations" and the County's claimed financial harms. *See Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9–12 (2010).

Examining each alleged misstatement confirms that the County has failed to plead fraud and causation with 9(b) particularity. *Dist. 1199P Health & Welfare Plan*, 784 F. Supp. 2d at 530 ("Plaintiffs' consumer fraud claim fails to meet the threshold Rule 9(b) pleading requirement for causation . . . Plaintiffs' theory of causation in this action is too speculative and attenuated to be cognizable."); *see also FMC Int'l A.G. v. ABB Lummus Glob., Inc.*, 2006 WL 213948, at *4 (S.D. Tex. Jan. 24, 2006) ("In the civil RICO context, Rule 9(b) also requires the plaintiff to allege specifically how each act of mail or wire fraud furthered the fraudulent scheme, who caused what to be mailed or wired when, and how the mailing or wiring furthered the fraudulent scheme."). In the Court's earlier opinion, the Court correctly ruled that the County cannot lump the PBM Defendants together in alleging fraud. Dkt. 66 at 10 n.7. Accordingly, OptumRx will ignore the alleged misstatements by "PBM Defendants" (*see e.g.* Dkt. 127 ¶¶ 524, 588, 652) and will focus instead on the alleged "misrepresentations" attributed by name to OptumRx.

***Alleged In-Person Meeting***. The County alleges that "[i]n August 2016, OptumRx submitted written material to and met in person with to [sic] Harris County and represented that

the payment it received from drug manufactures and its management of its national formularies lowered the cost of prescription medications." Dkt. 127 ¶ 435(d). Even assuming that the allegation is true, the County does not allege facts explaining how OptumRx's supposed statement was false or how it directly caused the County's claimed financial injuries. The County does not allege, for instance, that it or anyone else relied on the statement to do or not do anything. The County cannot, consistent with Rule 11, make those sorts of allegations because the County no longer alleges that it contracted with OptumRx for any rebate-related services or adopted an OptumRx formulary offering. On top of that, the alleged statement is from 2016—before the County allegedly contracted with Cigna and thus before OptumRx allegedly "delivered" any mail-order prescriptions to Harris County beneficiaries. *Id.* ¶¶ 411, 435(d). There is no plausible or particularized factual allegation directly linking the statement to the County's claimed financial harms. *See Anza.*, 547 U.S. at 461; *Holmes*, 503 U.S. at 268.

**Pricing Structure.** The County also alleges a 2011 statement that OptumRx "wants [its] clients to fully understand [its] pricing structure." *Id.* ¶ 434. Again, the County does not allege facts explaining how that statement was false or misleading, but as important, the County does not allege facts directly connecting that 2011 statement to the County's claimed financial harm. There are no factual allegations even trying to link the supposed 2011 statement to the County's claimed injuries, and there couldn't be given the County's withdrawal of allegations that it contracted with OptumRx.

**Formulary Allegations.** The County includes two allegations that OptumRx's formulary offerings "assist customers in achieving a low cost, high-quality pharmacy benefit" (*id.* ¶ 423) and "promote lower costs" through "encouraging customers to use drugs that offer improved value" based on the drug's "safety, cost, and effectiveness." *Id.* ¶ 424. But the County never explains how

17

those statements are false and, at any rate, the County no longer alleges that it contracted to receive those services from OptumRx. *Id.* ¶ 411 ("During the relevant time period, Harris County did *not* utilize any formularies developed by OptumRx."). The alleged misstatements could not possibly have directly caused the County's alleged financial injuries.

> **Senate Finance Committee Testimony.** The County also alleges that OptumRx's Chief Medical Officer testified before Congress that OptumRx "negotiate[s] with brand manufacturers to obtain significant discounts off list prices on behalf of our customers" (*id.* ¶ 425) and that OptumRx did not "see a correlation when rebates raise list prices." *Id.* ¶ 429. Again, the County does not allege facts explaining how those statements are false or directly caused the County's supposed financial harms. Nor could it: The County no longer alleges that it had a contractual relationship with OptumRx, adopted an OptumRx formulary, or received any rebate-related services from OptumRx.

Even apart from that, the statements cannot support the County's claims of mail- or wire-fraud—for at least two other reasons. First, the alleged congressional testimony did not involve OptumRx's use of the mail or a wire. 18 U.S.C. § 1341 (requiring use of the mail); 18 U.S.C. § 1343 (requiring the use of a wire). Second, the *Noerr-Pennington* doctrine protects any alleged testimony before Congress such that allegations of congressional testimony cannot form the basis of the County's claims. *Tuosto v. Philip Morris USA Inc.*, 2007 U.S. Dist. LEXIS 61669, at *16 (S.D.N.Y. Aug. 21, 2007) (holding that company executives' congressional testimony "constitute[d] the type of petitioning that is protected by the *Noerr-Pennington* doctrine and thus cannot form the basis of [plaintiff]'s claim of fraud.").

The bottom line is that there are no plausible or particularized factual allegations that any supposed OptumRx misrepresentation directly caused the County's claimed financial harms. For

that independent reason, the County's RICO claims should be dismissed.  Because the substantive RICO counts fail, the separate RICO conspiracy count necessarily fails.  *See Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000).

## III.  THE COUNTY'S UNJUST-ENRICHMENT AND MONEY-HAD-AND-RECEIVED CLAIMS ALSO FAIL.

The County again asserts two equitable claims seeking recovery based on allegations that OptumRx was unjustly enriched: money-had-and-received and unjust enrichment. Both claims require allegations (and ultimately proof) that OptumRx received and improperly retained a benefit from the County. *Davis v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 18786, at *9–10 (S.D. Tex. Feb. 14, 2014); *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 711 (Tex. App. 2006). The County's allegations fall short of that requirement.

Now that the County has removed allegations that it adopted an OptumRx formulary offering or paid OptumRx for insulin, there are no remaining factual allegations that OptumRx improperly received a benefit from Harris County. At most, the County alleges that OptumRx of its "predecessor" Catamaran provided services to Cigna. *See* Dkt. 127 ¶ 179 (alleging that "[i]n 2013, OptumRx's predecessor, Catamaran, entered into a contract with Cigna to become Cigna's 'exclusive pharmacy benefit partner' in a strategic 10-year agreement 'to provide PBM services to the more than 8 million Cigna clients and members."). Like in *Davis*, the County seeks to hold OptumRx liable for a remote benefit that comes with "market participation," but the *Davis* Court rejected that "unbounded theory of liability." *Id.* at *9. There is no plausible factual allegation that OptumRx received a benefit belonging to the County.

## IV.  THE COUNTY HAS NOT ALLEGED A PLAUSIBLE DECEPTIVE TRADE PRACTICES ACT CLAIM.

The County also cannot press a claim under the Texas Deceptive Trade Practices Act because it no longer alleges that it contracted with OptumRx or purchased insulin from OptumRx.

To assert a DTPA claim, the County must allege (1) that OptumRx committed a specifically enumerated false, misleading, or deceptive act, and (2) that the County relied on that act to its detriment. Tex. Bus. & Com. Code Sec. 17.50(a)(1). The County cannot allege that it relied on any OptumRx act to its detriment because the County no longer alleges that it had a relationship with OptumRx, adopted an OptumRx formulary offering, or paid OptumRx for insulin. Dkt. 127 ¶ 411 ("During the relevant time period, Harris County did *not* utilize any formularies developed by OptumRx."); *see also* Section I.A. That is why the County withdrew its fraud claim against OptumRx. *See* Dkt. 118 at 2 ("Plaintiff seeks leave to strike from all prior pleadings the allegation that Harris County utilized an OptumRx formulary" and "also seeks leave to strike its fraud claim as to OptumRx"); *see also* Dkt. 127 at p. 158, Sixth Cause of Action, Common Law Fraud (Against Eli Lilly, Novo Nordisk, Sanofi, and Express Scripts—but not OptumRx). It should have also withdrawn its DTPA claim.

## V.     THE CIVIL CONSPIRACY CLAIM ALSO FAILS.

The County's civil conspiracy claim fails for two reasons. First, civil conspiracy is a "derivative tort." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007). "If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails." *Id.* (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)); *see also EuroTec Vertical Flight Sols., LLC v. Safran Helicopter Engines S.A.S.*, 2019 WL 3503240, at *25 (N.D. Tex. Aug. 1, 2019). Because the County's other claims against OptumRx fail, its conspiracy claim necessarily fails.

Second, the County's civil conspiracy claim fails because there are no plausible factual allegations that OptumRx participated in a conspiracy. Instead, the County alleges a contractual arrangement that OptumRx or its "predecessor" Catamaran had with Cigna (the County's health plan) under which "OptumRx managed the County's pharmacy network, which included

processing pharmacy claims for prescriptions dispensed to Harris County's Beneficiaries, and operated mail order pharmacies that delivered prescription drugs to Harris County's Beneficiaries." Dkt. 127 ¶ 411. But even taking those allegations as true, they have nothing to do with the County's rebate-related claims and allegations. There are no factual allegations (much less plausible factual allegations) that OptumRx charged the prices that Harris County paid for insulin products or conspired with Cigna about those prices. On the contrary, the County has withdrawn those allegations. *Compare* Dkt. 127, *with* Dkt. 110 ¶ 301.

## <u>CONCLUSION</u>

This is the County's fifth attempt to plead a claim against OptumRx, and it has failed. The Court should dismiss the County's Fourth Amended Complaint with prejudice. *Morlock, LLC v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 131604, at *14–15 (S.D. Tex. Sep. 13, 2013) (dismissing plaintiff's claims with prejudice because it was clear that plaintiff's pleading defects were incurable).

Dated: October 18, 2021

Respectfully submitted,

*/s/ Justin E. VandenBout*
Justin E. VandenBout
Attorney-in-Charge
State Bar No. 24060765
Federal Bar No. 912644
**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY**
1200 Smith Street, Ste. 1400
Houston, TX 77002
Tel.: (713) 658-1818
Facsimile: (713) 658-2553
justin.vandenbout@chamberlainlaw.com

OF COUNSEL:

Brian D. Boone (admitted pro hac vice)
Emily C. McGowan (admitted pro hac vice)

21

**ALSTON & BIRD LLP**
101 South Tryon Street
Charlotte, NC 28280
Tel.: (704) 444-1000
Facsimile: (704) 444-1111
brian.boone@alston.com
emily.mcgowan@alston.com

John Snyder (admitted pro hac vice)
**ALSTON & BIRD LLP**
950 F Street NW
Washington, D.C. 20004
Tel.: (202) 239-3300
Facsimile: (202) 239-3333
john.snyder@alston.com

Andrew Hatchett
State Bar No. 24085368
S.D. Tex. No. 3490219
**ALSTON & BIRD LLP**
1201 W. Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Facsimile: (404) 881-7777
andrew.hatchett@alston.com

Jean Richmann (admitted pro hac vice)
**ALSTON & BIRD LLP**
560 Mission Street, Ste. 2100
San Francisco, CA 94105
Tel.: (415) 243-1039
Facsimile: (415) 243-1001
jean.richmann@alston.com

*Attorneys for OptumRx, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the above and foregoing documents has been served on October 18, 2021 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rules 5.1 and 5.3.


*<u>/s/ D. Andrew Hatchett</u>*
D. Andrew Hatchett